FILED
DES MOINES, IOWA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

2004 JUL 30  PM 4: 24

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

|  |  |  |
|---|---|---|
| **MIDDLETON INC.,** | ) | |
| | ) | **Civil Action No. 4:03-CV-40493** |
| *Plaintiff,* | ) | |
| | ) | **Judge Gritzner** |
| **v.** | ) | |
| | ) | |
| **3M COMPANY** | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS EXPEDITED MOTION TO STAY**
**PENDING REEXAMINATION OF U.S. PATENT NO. 4,944,514 BY**
**THE PATENT AND TRADEMARK OFFICE**



**TABLE OF CONTENTS**

I.    INTRODUCTION..................................................................................................1

II.   ARGUMENT........................................................................................................7

     A.   This Court Should Grant The Motion To Stay Because Staying The Action
          Will Be The Most Efficient Use Of Judicial Resources. ........................................7

     B.   This Court Should Grant The Motion To Stay Because Staying The Action
          Will Simplify The Issues In This Case Since This Court Can Refer The
          Patent Validity Issues To The Expertise Of The PTO. ............................................9

     C.   Granting The Motion To Stay Will Not Unduly Prejudice Middleton Nor
          Present A Clear Tactical Disadvantage To Middleton. ........................................11

III.  CONCLUSION ..................................................................................................12

## I.   INTRODUCTION

Last week, the U.S. Patent and Trademark Office's (the "PTO") Reexamination Division's expert examiners determined that multiple independent prior art references "raise[] substantial new questions of the patentability of claims 4-7," the asserted patent claims in this infringement suit.[1]  *See* Ex. 1, 7/19/04 PTO Office Communication.  Specifically, the PTO determined that multiple prior art references either alone or in combination with each other raise these questions including the Amos, Sackoff, Barrett, Tarbutton, Shevchenko, Nappi, Shirasu, Wilson, Kupits, Yakubik, Milne, Kingsley, and Charon references (some of which were cited to this Court in 3M's motion for summary judgment of invalidity).[2]

It is now highly likely that the PTO will either declare these claims of U.S. Patent No. 4,944,514 (the "'514 patent") invalid, or require Middleton to narrow the claims to avoid the prior art references 3M cited in its petition for reexamination. *See Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, 70 U.S.P.Q.2d 1319, 2004 WL 422697, at *2 (N.D. Ill. 2004) ("Generally speaking, the PTO invalidates 10% of the patents it reexamines and amends the claims in 64%.") Either result could end or dramatically impact the issues remaining in this case.

3M, therefore, asks this Court to stay all proceedings in this case pending the results of the PTO's reexamination, which is highly likely to result in the PTO either declaring the patent claims invalid (thus resolving this case entirely) or significantly narrowing their scope (resulting

---

[1]   3M received the official Communication related to this action from the Patent and Trademark Office just this Monday, July 26, 2004.

[2]   U.S. Patent No. 3,785,102 ("Amos"); U.S. Patent Number 4,151,319 ("Sackoff"); U.S. Patent Number 4,543,765 ("Barrett"); U.S. Patent No. 4,328,274 ("Tarbutton"); Russian Patent Publication SU 1,111,880 ("Shevchenko"); U. S. Patent Number 3,665,543 ("Nappi"); Japanese Patent Document Sho 61-98834 ("Shirasu"); Unexamined German Patent Application Number 1,809,794 ("Wilson"); U. S. Patent Number 3,788,941 ("Kupits"); U. S. Patent Number 2,987,103 ("Yakubik"); U. S. Patent Number 4,221,620 ("Milne"); U.S. Patent Number 4,095,340 ("Kingsley"); and U.S. Patent Number 4,115,917 ("Charon").

in different issues to be tried). *See id.* ("There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope.")  This Court should grant a stay because staying the action:  (1) allows for the most efficient use of this Court's resources; (2) will simplify the issues for trial; and (3) will not unduly prejudice Middleton.[3]  3M requests the expedited relief because the Pre-trial Order is due in this case on August 12, 2004 and the trial is scheduled for October 12, 2004.

## FACTUAL BACKGROUND

Although this is an aged case, validity of the '514 patent has only been explored by the parties for a little over a year. After Middleton filed this suit against 3M on October 16, 1996 in the Northern District of Illinois, that court stayed all discovery unrelated to infringement — including validity-related discovery — so that the parties could focus on the infringement question. *See* Ex. 2, 7/29/97 Hearing Trs. at 4-6. On November 24, 1998, that court granted summary judgment of non-infringement to 3M, based on its construction of the claims. *Middleton, Inc. v. 3M Co.*, No. 96-C-6781, 1998 WL 852841 (N.D. Ill. Nov. 30, 1998).   On November 16, 1999, the Federal Circuit reversed and remanded the district court's grant of summary judgment, holding that the district court had incorrectly interpreted the claims. *See Middleton Inc. v. 3M Co.*, No. 99-1201, 217 F.3d 860, 1999 WL 1072246 (Fed. Cir. Nov. 16, 1999) (unpublished) ("*Middleton I*").   Based on the claim interpretation in *Middleton I*, on September 28, 2001 the district court *again* granted summary judgment of non-infringement to 3M. *See Middleton Inc. v. 3M Co.*, No. 96-C-6781, 2001 WL 1155151 (N.D. Ill. Sept 28, 2001).

---

[3]   3M conferred with counsel for Middleton on this issue, who received a copy of the PTO's decision only Wednesday of this week, and has been unavailable to discuss this matter with his client.  Counsel for Middleton acknowledges that the parties had met and conferred on this issue and counsel have further agreed to continue their discussion as to the appropriate resolution of this case.

On November 27, 2002, the Federal Circuit again reversed and remanded, holding that the district court had again erred in its claim interpretation. *See Middleton Inc. v. 3M Co.*, 311 F.3d 1384 (Fed Cir. 2002).

Having litigated the case (and won it twice at the district court level) on noninfringement grounds, 3M had not explored validity issues related to the '514 patent in any way. This changed on March 11, 2003, when the Illinois court issued a scheduling order with dates for final discovery cutoffs, implicitly lifting the stay on validity discovery. 3M then began to investigate the validity of the '514 patent, discovering numerous references that either anticipate or render obvious the claims of the '514 patent. 3M did two things with these numerous references: (1) on April 23, 2004, it filed a request with the PTO that it reexamine the claims of the '514 patent; and (2) on June 7, 2004, 3M placed many of the references before this Court via a motion for summary judgment of invalidity.[4]

Last week, on July 19, 2004 the PTO granted 3M's request to reexamine the claims of the '514 patent, finding that "a substantial new question of patentability affecting claims 4-7 of United States Patent Number 4,944,514 is raised by the request for reexamination." *See* Ex. 1, at 2. As its decision indicates, this was not a close call – the PTO agreed with virtually all of 3M's assertions about the teachings of these references. Some of the highlights include the PTO's agreement with 3M's arguments – presently before this Court in 3M's motion for summary judgment of invalidity — that each of the Amos, Sackoff, Barrett, and Tarbutton patents teach at

---

[4]   The Petition for Reexamination and 3M's Motion for Summary Judgment contain overlapping references, but for procedural reasons relating to the PTO's inability to examine evidence related to invalidating public uses and sales, as well as 3M's desire to present this Court with focused issues, the Petition for Reexamination and 3M's Motion for Summary Judgment of Invalidity each contains references not included in the other.

least every element of claim 4 of the '514 patent.  Additionally, the following chart summarizes

the PTO's findings on the teachings of 3M's cited references:[5]

---

[5]    U.S. Patent Numbers 3,785,102; 4,151,319; 4,543,765; and 4,328,274, respectively.  3M cites each of these
references to this Court in its motion for summary judgment of invalidity.

| '514 Patent Claims | PTO Grant of Reexamination |
|---|---|
| 4. On a floor having a flat top surface and an improved material for finishing the top surface of the floor, the improvement comprising:<br><br>at least one elongated sheet including a uniform flexible film of clear plastic material having a thickness between about one mil and about twenty-five mils and<br><br>a continuous layer of adhesive material disposed between the top surface of the floor and the flexible film, the adhesive layer releasably adhering the flexible film onto the top surface of the floor. | Substantial New Question of Patentability Raised by:<br><br>• Amos<br>• Sackoff<br>• Barrett<br>• Tarbutton<br>• Shevchenko<br>• Amos and Nappi in combination<br>• Shirasu, Amos, and Nappi in combination<br>• Shevchenko and Wilson in combination<br>• Kupits and Yakubik in combination |
| 5. The improvement of claim 4 wherein the at least one elongated sheet comprises at least two sheets extending side by side, the two sheets having adjacent longitudinal edges that meet in a close fitting butt joint. | Substantial New Question of Patentability Raised by:<br><br>• Amos<br>• Sackoff<br>• Barrett<br>• Amos and Nappi in combination<br>• Shevchenko and Wilson in combination<br>• Amos and Milne in combination<br>• Amos, Kingsley and Charon in combination<br>• Sackoff and Milne in combination<br>• Sackoff, Kingsley and Charon in combination |

| 6. The improvement of claim 4 or 5 wherein each elongated sheet includes an opaque decorative layer imprinted on the undersurface of the clear plastic layer between the clear plastic layer and the adhesive layer. | Substantial New Question of Patentability Raised by:<br><br>• Amos<br>• Sackoff<br>• Tarbutton<br>• Shevchenko<br>• Amos and Nappi in combination<br>• Shevchenko and Wilson in combination<br>• Kupits and Yakubik in combination |
|---|---|
| 7. The improvement of claim 6 wherein the opaque decorative layer extends over the entire undersurface of the clear plastic layer. | Substantial New Question of Patentability Raised by:<br><br>• Amos<br>• Sackoff<br>• Tarbutton<br>• Shevchenko<br>• Amos and Nappi in combination<br>• Shevchenko and Wilson in combination<br>• Kupits and Yakubik in combination |

*See* Ex. 1, 7/19/04 PTO Office Communication at 2-7.  Thus, the ***independent*** patent examiner,

having reviewed and considered these prior art references during the past 90 days, came to the

same conclusion as 3M — these references disclose each element of the asserted claims.

While the PTO reexamines the claims of the '514 patent, this case is scheduled to be tried

on October 12, 2004, with pretrial materials due on August 12, 2004.  In addition to 3M's motion

for summary judgment of invalidity and a motion for summary judgment that claims 6 and 7 are

not infringed, Middleton has a pending motion for summary judgment of infringement.  Each

one of these motions are obviously dependent upon what the PTO does with the claims of the

6

'514 patent. 3M therefore ask this Court to stay proceedings in this case pending the outcome of the reexamination.

## II.     ARGUMENT

This Court should stay this action pending the PTO's reexamination of the '514 patent because the scope of the patent claims (which the PTO likely will narrow, if it allows any claims to issue at all) controls the outcome of any subsequent infringement analysis. *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002) ("an assessment of whether an accused device infringes claims of a patent necessarily involves both an identification and interpretation of the asserted claims, and a comparison of the properly interpreted claim limitations to the elements of the accused device"). This court has complete discretion to order a stay pending the outcome of a reexamination by the PTO. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). This Court should do so here because staying the action (1) allows for the most efficient use of this Court's resources; (2) will simplify the issues for trial; and (3) will not unduly prejudice Middleton.

### A.     This Court Should Grant The Motion To Stay Because Staying The Action Will Be The Most Efficient Use Of Judicial Resources.

If this Court conducts a trial in October while the PTO reexamines the '514 patent, it will represent a very real waste of judicial resources. *See Grayling Indus., Inc. v. GPAC, Inc.*, 19 U.S.P.Q.2d 1872, 1991 WL 236196, at *3 (N.D. Ga. 1991) ("[I]f the patents are declared unpatentable, this [court] action would be moot."). At the very least, if the jury found the patent valid and infringed, this Court would be required to conduct a separate damages trial after a final

determination is made on the PTO's validity findings.[6] *See Standard Havens Products, Inc. v. Gencor Industries, Inc.* 996 F.3d 1236, 1993 WL 172432 (Fed. Cir. May 21, 1993) (unpublished) ("*Standard III*") (reversing the trial court's denial of stay of damages proceedings "until the reexamination decision becomes final").[7]

In *Standard Havens*, while a petition for reexamination was pending, a jury found the patent valid and infringed (neither side requested a stay of these proceedings), and the Federal Circuit upheld the jury's decision, but remanded solely to address damages issues. 953 F.2d 1360, 1376 (Fed. Cir. 1991) ("*Standard Havens I*"). Before the Federal Circuit heard the appeal, the PTO rejected all patent claims. *Id.* at 1366 n.2. On remand, the defendant requested a stay pending the final outcome of the reexamination, but the district court denied the defendant's motion. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 810 F. Supp. 1072, 1077 (W.D. Mo. 1993) ("*Standard Havens II*"), *rev'd, Standard Havens III*, 996 F.2d at 1236. The Federal Circuit in *Standard III* reversed the district court's denial of the defendant's request for a stay of injunction and stay of damages proceedings. 996 F.2d at 1236. The Federal Circuit found that "if a final decision of unpatentability means the patent was void *ab initio*, then damages would also be precluded." *Id.* To avoid problems like those in *Standard Havens*, this Court also should stay all infringement proceedings because the reexamination decision will effect the scope of the

---

[6]   Even if this Court found the '514 patent valid, the PTO would continue its reexamination of the patent because the PTO cannot stop its reexamination proceedings. *See Gioello Enter. LTD. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340, at *2 (D. Del. Jan. 29, 2001) ("the PTO cannot stay the reexamination once a request has been granted"). Moreover, the validity burden is less stringent in the PTO, so the PTO could cancel claims that the Court found valid. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428-29 (Fed. Cir. 1988) ("The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions.").

[7]   Although this case is an unpublished Federal Circuit opinion, its reasoning and result is persuasive authority on staying cases pending a reexamination of claims by the PTO.

claims and, therefore, the determination of infringement. *See Standard Havens III*, 996 F.3d 1236 (noting that "[t]he district court incorrectly concluded that the reexamination decision can have no effect on this infringement suit").

> **B.    This Court Should Grant The Motion To Stay Because Staying The Action Will Simplify The Issues In This Case Since This Court Can Refer The Patent Validity Issues To The Expertise Of The PTO.**

The PTO's reexamination process would also assist this Court.  Granting a stay and allowing the PTO to reexamine the patent's validity has many advantages:

> 1.    Most of the prior art presented to this Court will have been first considered by the PTO, allowing this Court to take advantage of the PTO's particular legal and technical expertise;
>
> 2.    This case will likely be dismissed if the PTO's reexamination results in the invalidation of the claims of the '514 patent;
>
> 3.    The outcome of the reexamination may encourage a settlement without the further intervention by this Court;
>
> 4.    The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation;
>
> 5.    Issues, defenses, and evidence will be more focused and easily presented following reexamination; and
>
> 6.    The cost will likely be reduced both for the parties and this Court.

*See Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc.*, 68 U.S.P.Q.2d 1755, 1758-59, 2003 WL 22870902 (E.D. Mich. 2003) ("[T]he PTO's determination will be beneficial to the efficient resolution of this action.  The PTO may resolve any remaining disputes [and] simplify the issues . . . ."); *Softview Computer Prods. Corp. v. Haworth Inc.*, 56 U.S.P.Q.2d 1633, 1636, 2000 WL 1134471 (S.D.N.Y. 2000) ("[I]f the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified."); *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 917 F. Supp. 951, 953 (W.D.N.Y. 1996) ("Because, [sic] the PTO is

considered to have expertise in deciding issues of patentability[,] many courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it."); *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 3 U.S.P.Q.2d 1889, 1890, 1987 WL 6314 (N.D. Ill. 1987) (citing *Fisher Controls Co., Inc. v. Control Components, Inc.*, 443 F. Supp. 581, 582 (S.D. Iowa 1977)); *Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886, 887, 1985 WL 1483 (W.D. Okla. 1985) ("The reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled."); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO . . . ."). Thus, a stay is justified when "the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." *See Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998) (citing *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1380-81 (N.D. Cal. 1994)).

**C.   Granting The Motion To Stay Will Not Unduly Prejudice Middleton Nor Present A Clear Tactical Disadvantage To Middleton.[8]**

If this Court grants the motion to stay, Middleton will neither be prejudiced by a stay nor will it suffer a clear tactical disadvantage. *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, 70 U.S.P.Q.2d 1319, 2004 WL 422697, at *1 (N.D. Ill. 2004) (another factor courts consider is "whether a stay will unduly prejudice or tactically disadvantage the non-moving party . . . ." ). Middleton will not be unduly prejudiced if this Court grants the motion to stay. The time and resources expended on this case thus far cannot be recouped; however, by granting the motion to stay this Court can ensure that no further resources by *either* party will be unnecessarily expended preparing for or conducting a trial.

Middleton will also not suffer a tactical disadvantage or irreparable harm. Middleton is not now selling or marketing any products under its patent, nor has it ever done so — it has no market to protect. *See Gioello Enter. LTD. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL

---

[8]   Issuing a stay is appropriate even at this stage of the litigation. This Court has not yet ruled upon lengthy summary judgment motions, and there is no sense for the Court to waste its resources deciding the motions at this time, especially where the claims, if they issue at all from reexamination, will likely be significantly altered. *See Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc.*, 68 U.S.P.Q.2d 1755, 1757, 2003 WL 22870902 (E.D. Mich. 2003) (granting motion to stay, in part, because "far more time and resources remain to be spent . . . . Two responses to motions for summary judgment must be submitted, the Court has not begun to review those motions, and much remains to be done by the parties and the Court to prepare this case for trial"). Moreover, courts frequently grant motions to stay pending a patent reexamination late in litigation. *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc.*, 68 U.S.P.Q.2d 1755, 2003 WL 22870902 (E.D. Mich. 2003) (granting defendant's motion to stay filed less than two months before trial was scheduled to commence and after extensive discovery); *Softview Computer Prods. Corp. v. Haworth Inc.*, 56 U.S.P.Q.2d 1633, 2000 WL 1134471 (S.D.N.Y. 2000) (granting motion to stay after burdensome discovery); *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 917 F. Supp. 951 (W.D.N.Y. 1996) (granting motion to stay after fact discovery was completed and trial date set); *Robert H. Harris Co. Inc. v. Metal Manufacturing Co. Inc.*, 19 U.S.P.Q.2d 1786, 1991 WL 217666 (E.D. Ark. 1991) (granting motion to stay approximately one month before trial was scheduled to begin); *Grayling Indus., Inc. v. GPAC, Inc.*, 19 U.S.P.Q.2d 1872, 1991 WL 236196 (N.D. Ga. 1991) (granting motion to stay after action had been pending for two years and pretrial order was signed); *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 3 U.S.P.Q.2d 1889, 1987 WL 6314 (N.D. Ill. 1987) (granting motion to stay after discovery was completed); *Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886, 1985 WL 1483 (W.D. Okla. 1985) (granting motion to stay after substantial discovery, issuance of the pretrial order, and continuance of original trial date).

125340, at *2 (D. Del. Jan. 29, 2001) (granting the motion to stay and finding prejudice to the plaintiff was slight in part because the plaintiff was "not selling or actively licensing goods or services related to [the patent]"). If the patent is ultimately found to be valid by the PTO, and then not invalid and infringed at trial, Middleton may still be entitled to seek damages. As in a preliminary injunction case, in which courts deny the injunction when the patentee can be fully compensated by money damages, Middleton will get its damages (with the potential entitlement to prejudgment interest) following a trial on the merits *under the correct claim scope*. *See Reebok Int'l LTD v. J. Baker, Inc.*, 32 F.3d 1552, 1559 (Fed. Cir. 1994) (affirming denial of preliminary injunction because there was no irreparable harm and sales of allegedly infringing products could be fully compensated by money damages); *Gioello Enter.*, 2001 WL 125340, at *2 ("money damages is an adequate remedy for any delay in redress"). 3M is a highly stable company, and will be able to pay any damages that might be awarded to Middleton in the future. Thus, this Court should grant the motion to stay because Middleton will not suffer a tactical disadvantage or irreparable harm.

## III.   CONCLUSION

For the reasons stated above, the Court should grant the motion to stay because staying the action: (1) allows for the most efficient use of this Court's resources; (2) will simplify the issues for trial; and (3) will not unduly prejudice Middleton.

Date:

Respectfully submitted,

David M. Swinton
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: 515-243-7611
Fax: 515-243-2149
dswinton@ahlerslaw.com

William A. Streff
David K. Callahan
Mary Zaug
Karen Nelson
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000
Fax: (312) 861-2200
knelson@kirkland.com
*Attorneys for 3M Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of July, 2004, true and correct copies

of DEFENDANT'S EXPEDITED MOTION TO STAY ACTION PENDING

REEXAMINATION OF U.S. PATENT NO. 4,944,514 BY THE PATENT AND

TRADEMARK OFFICE, and accompanying memorandum were served via hand delivery and

U.S. mail to the following attorneys for Middleton:

Jonathan G. Bunge
Law Offices of Jonathan G. Bunge
3014 N. Racine, Suite 1
Chicago, IL 60614
(U.S. MAIL)

George C. Summerfield
Stadhim & Grear Ltd.
400 N. Michigan Ave
Chicago, IL 60611
(FACSIMILE AND OVERNIGHT DELIVERY)

Suzanne J. Levitt (ISBA 16527)
Neal and Bea Smith Law Center
2400 University Avenue
Law School Legal Clinic
Des Moines, Iowa 50311-4505
515-271-3851
(HAND DELIVERY)

_____
Attorney for the Defendant,
3M Company



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/007,015 | 04/23/2004 | 4944514 | 960222 | 8526 |

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

COLENE H. BLANK
OFFICE OF INTELLECTUAL PROP.
COUNSEL
3M INNOVATIVE PROPERTIES
COMPANY
P.O. BOX 33427
ST. PAUL, MN  55133-3427

OFFICE OF INTELLECTUAL
PROPERTY COUNSEL
3M INNOVATIVE PROPERTIES COMPANY

DATE MAILED: 07/19/2004

JUL 2 6 2004

REFERRED TO

Please find below and/or attached an Office communication concerning this application or proceeding.



EXHIBIT
1

| *ORDER GRANTING/DENYING REQUEST FOR INTER PARTES REEXAMINATION* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/007,015 | 4944514 |
| | Examiner | Art Unit |
| | Brian E. Glessner | 3635 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

The request for *inter partes* reexamination has been considered. Identification of the claims, the references relied on, and the rationale supporting the determination are attached.

Attachment(s):  ☐ PTO-892    ☐ PTO-1449 or PTO/SB/08    ☐Other: _____

1. ☒ The request for *inter partes* reexamination is GRANTED.

    ☐ An Office action is attached with this order.

    ☐ An Office action will follow in due course.

2. ☐ The request for *inter partes* reexamination is DENIED.

This decision is not appealable. 35 U.S.C. 312(c). Requester may seek review of a denial by petition to the Director of the USPTO within ONE MONTH from the mailing date hereof. 37 CFR 1.927. EXTENSIONS OF TIME ONLY UNDER 37 CFR 1.183. In due course, a refund under 37 CFR 1.26( will be made to requester.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Order.

Application/Control Number: 90/007,015
Art Unit: 3635

### *Reexamination*

1.     The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No.  throughout the course of this reexamination proceeding.  The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.

2.     A substantial new question of patentability affecting claims 4-7 of United States Patent Number 4,944,514 is raised by the request for reexamination.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).  Extension of time in reexamination proceedings are provided for in 37 CFR 1.550(c).

The request indicates that the Requester considers claims 4-7 to be unpatentable over the references to Amos '102, Sackoff '319, Barrett '765, Tarbutton '274, Schevchenko (SU 1,111,880), Nappi '543, Shirasu (61-98834), Wilson (German Patent application 1,809,794), Kupits '941, Yakubik '103, Milne '620, Kingsley '340 and Charon '917.

It is agreed that the consideration of Amos raises a substantial new question of patentability as to claims 4-7 of the '514 patent.  The requestor pointed out that Amos anticipates at least claims 4-7 based on 35 U.S.C. 102(b).  The examiner agrees that Amos discloses on a floor having a flat top surface an improved material for finishing the top surface of the floor, the improvement comprising at least one elongated sheet of a flexible film of clear

plastic material having a thickness between about 1 mil and about 25 mils and a continuous layer of adhesive disposed between the top surface of the floor and the flexible film, wherein the adhesive layer releasably adheres the film to the top surface of the floor.   Therefore, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not the claims are patentable.

It is agreed that the consideration of Sackoff raises a substantial new question of patentability as to claims 4-7 of the '514 patent.   The requestor pointed out that Sackoff anticipates at least claims 4-7 based on 35 U.S.C. 102(b).   The examiner agrees that Sackoff discloses on a floor having a flat top surface an improved material for finishing the top surface of the floor, the improvement comprising at least one elongated sheet of a flexible film of clear plastic material having a thickness between about 1 mil and about 25 mils and a continuous layer of adhesive disposed between the top surface of the floor and the flexible film, wherein the adhesive layer releasably adheres the film to the top surface of the floor.   Therefore, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not the claims are patentable.

It is agreed that the consideration of Barrett raises a substantial new question of patentability as to claims 4 and 5 of the '514 patent.   The requestor pointed out that Barrett anticipates at least claims 4 and 5 based on 35 U.S.C. 102(b).   The examiner agrees that Barrett discloses on a floor having a flat top surface an improved material for finishing the top surface of the floor, the improvement comprising at least one elongated sheet of a flexible film of clear plastic material having a thickness between about 1 mil and about 25 mils and a continuous layer of adhesive disposed between the top surface of the floor and the flexible film, wherein the

adhesive layer releasably adheres the film to the top surface of the floor and the sheets are laid in

butt joining fashion.  Therefore, there is a substantial likelihood that a reasonable examiner

would consider this teaching important in deciding whether or not the claims are patentable.

    It is agreed that the consideration of Tarbutton raises a substantial new question of

patentability as to claims 4, 6, and 7 of the '514 patent.  The requestor pointed out that Tarbutton

anticipates at least claims 4, 6, and 7 based on 35 U.S.C. 102(b).  The examiner agrees that

Tarbutton discloses on a floor having a flat top surface an improved material for finishing the top

surface of the floor, the improvement comprising at least one elongated sheet of a flexible film of

clear plastic material having a thickness between about 1 mil and about 25 mils and a continuous

layer of adhesive disposed between the top surface of the floor and the flexible film, wherein the

adhesive layer releasably adheres the film to the top surface of the floor and that a decorative

surface is placed on the underside of the sheet .  Therefore, there is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not the

claims are patentable.

    It is agreed that the consideration of Shevchenko raises a substantial new question of

patentability as to claims 4, 6, and 7 of the '514 patent.  The requestor pointed out that

Schevchenko anticipates at least claims 4, 6, and 7 based on 35 U.S.C. 102(b).  The examiner

agrees that Schevchenko discloses on a floor having a flat top surface an improved material for

finishing the top surface of the floor, the improvement comprising at least one elongated sheet of

a flexible film of plastic material having a thickness between about 1 mil and about 25 mils and a

continuous layer of adhesive disposed between the top surface of the floor and the flexible film,

wherein the adhesive layer releasably adheres the film to the top surface of the floor, and that the

Application/Control Number: 90/007,015                                           Page 5
Art Unit: 3635

film has a decorative surface extending over the entire surface of the sheet. Therefore, there is a

substantial likelihood that a reasonable examiner would consider this teaching important in

deciding whether or not the claims are patentable.

        It is agreed that the consideration of Amos in view of Nappi raise a substantial new

question of patentability as to claims 4-7 of the '514 patent. As pointed out above, Amos

discloses the limitations of claims 4-7. Nappi further teaches that a thin sheet of polyethylene

film is flexible. Therefore, there is a substantial likelihood that a reasonable examiner would

consider this teaching important in deciding whether or not the claims are patentable.

        It is agreed that the consideration of Shirasu in view of Nappi and Amos raise a

substantial new question of patentability as to claim 4 of the '514 patent. The examiner agrees

that Shirasu discloses that it is known to place a polyethylene sheeting material on the floors and

walls in a nuclear power generating facility undergoing repairs, or assembly and disassembly of

equipment "to prevent the dispersion of radioactive powdered matter." Shirasu, Page 2. Shirasu

further teaches "coating a peelable adhesive onto the back surface of the polyethylene sheeting"

so that "when one lays the polyethylene sheeting,... onto prescribed floor surfaces and wall

surfaces, the adhesive adheres to the floor surface and the sheeting is secured." Shirasu, Page 3.

When the work is completed, the polyethylene sheeting material is peeled off. The requestor

then states that Nappi and Amos teach that it is known to make floor sheeting thinner.

Therefore, there is a substantial likelihood that a reasonable examiner would consider this

teaching important in deciding whether or not the claims are patentable.

        It is agreed that the consideration of Shevchenko in view of Wilson raise a substantial

new question of patentability as to claims 4-7 of the '514 patent. As pointed out above,

```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION


 3
    MIDDLETON, INC.,                    )
 4                                      )
                        Plaintiff,      )   No. 96 C 6781
 5                                      )
             v.                         )   Chicago, Illinois
 6                                      )   July 29, 1997
    MINNESOTA MINING & MANUFACTURING)       10:25 a.m.
 7  COMPANY,                            )
                                        )
 8                      Defendant.      )

 9

10                  TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JOHN F. GRADY
11
    APPEARANCES:
12
    For the Plaintiffs:   MAYER, BROWN & PLATT
13                        190 South LaSalle Street
                          Chicago, IL   60603, by
14                        MR. DONALD W. RUPERT

15                        ROSS & HARDIES
                          150 North Michigan Avenue
16                        Suite 2500
                          Chicago, IL   60601, by
17                        MR. JONATHAN G. BUNGE

18
    For the Defendants:   KIRKLAND & ELLIS
19                        200 East Randolph Drive
                          Chicago, IL   60601, by
20                        MR. DAVID K. CALLAHAN

21

22  Also Present:         MR. RICHARD ASSMUS

23

24  COURT REPORTER:       LAURA M. BRENNAN
                          219 South Dearborn Street, Room 2280
25                        Chicago, IL   60604
                          (312) 427-4393
```

EXHIBIT
2

2

1      (The following proceedings were had in open court:)

2           THE CLERK:  96 C 6781, Middleton v. MM Mining, for

3  status.

4           MR. CALLAHAN:  David Callahan for defendant 3M.

5           MR. RUPERT:  Good morning, your Honor; Donald Rupert

6  of Mayer, Brown; John Bunge from Ross, Hardies.

7           And I would like to introduce my colleague, Rick

8  Assmus, also from Mayer, Brown.  He is a summer associate with

9  us.

10           THE COURT:  Good morning.

11           MR. RUPERT:  Your Honor, we are here on status this

12  morning.

13           Very briefly to bring you up to date, 3M initiated

14  discovery in terms of interrogatories and document requests.

15  We have responded to those.  We had some correspondence with

16  counsel concerning adequacy of our responses.  We have

17  supplemented those responses to include such matters as reading

18  the claims, asserted claims, of the patents on 3M's accused

19  products.

20           Plaintiff has also served interrogatories and document

21  requests on 3M, and we have been asked to agree to an extension

22  of time, a short extension, through the end of August for 3M to

23  respond to those, and we have agreed to that.  So discovery is

24  proceeding in that manner, your Honor.

25           We do have one area of disagreement that I would like

1  to advise the Court on, and that relates to the breadth of

2  discovery at this stage in the case.  We had a chambers

3  conference with your Honor, I believe it was the latter part of

4  April, during which we discussed the desirability -- both

5  parties discussed the desirability of having what is called a

6  Markman hearing in which the Court would ultimately construe

7  the claims of the patents as a matter of law.

8       And we discussed at that time the desirability of

9  limiting discovery at least in the short period directed to the

10  claim construction issues so that we could then present the

11  appropriate proofs to the Court at the Markman hearing.  We

12  were under the understanding, as we left your Honor's chambers,

13  that that is the way the discovery would be conducted, at least

14  in the interim period.

15       I believe 3M is taking the position that they have a

16  different understanding, and we, I think, need to get that

17  clarified with your Honor at this point because I don't think

18  it is necessary for us to go through a full bore of damage

19  discovery in matters of that nature until such time as at least

20  we know what the claims mean as a matter of law.  So that is an

21  area of disagreement.

22       THE COURT:  Mr. Bunge, what do you say in response?

23       MR. RUPERT:  Mr. Bunge is representing the --

24       MR. BUNGE:  I agree with him, your Honor.

25       MR. RUPERT:  Plaintiff here, defendant there.

LAURA M. BRENNAN, Official Reporter

4

1       MR. CALLAHAN:   My guess is Mr. Bunge will agree with

2   what Mr. Rupert says.

3       THE COURT:   Okay.

4       MR. CALLAHAN:   Your Honor, I would say I think we are

5   both laboring under the same view of discovery; that is, the

6   plaintiff served similar discovery on 3M.   Now, it may well be

7   that it is advisable for the parties to put that off until we

8   set a date for the Markman hearing.

9       Our hope, your Honor, as you expressed at the initial

10  conference between the parties, was that we take some initial

11  discovery which both sides have now at least got out and will

12  be completed by the end of August, and that we could set a date

13  for a Markman hearing very shortly after that.   These are

14  not --

15      As your Honor recognized, this is the contact paper

16  that goes on the floor and contains advertisements.   It is not

17  complex technology.   We don't need to get into a lot of

18  extrinsic material to construe these claims.

19      We think it can be done on the material that is

20  intrinsic to the patent itself, and we would like to do that

21  sooner rather than later.

22      THE COURT:   All right, I am in agreement then with

23  both of you.

24      My experience in the Markman hearing business so far,

25  some of which has occurred, I think, after our conference, has

1   been very favorable in terms of the possibility of resolving a

2   case without discovery that becomes unnecessary if the claims

3   are construed so as to make that discovery irrelevant.

4        The problem with Markman hearings that are being held

5   now is that, for the most part, they are being held in old

6   cases where all the water is already over the dam as far as

7   discovery is concerned.

8        But in new cases, I am of the view that, generally

9   speaking, you should get ready for that and do it as soon as

10  possible so as to save time and money for the parties;

11  otherwise what typically happens is each side is doing its own

12  discovery pertinent to its own view of what the claims mean,

13  and some of that could well turn out to be just a waste of

14  time.

15       MR. RUPERT:  If I might interject, your Honor, there

16  is --

17       Counsel referred to extrinsic versus intrinsic

18  evidence, and we believe that in this instance, particularly

19  because of the relationship that these two parties had in

20  respect of this exact patent at one point in the past -- we

21  believe it is going to be necessary to take some deposition

22  discovery of certain 3M individuals once they are identified to

23  us, so we can understand how 3M at one point in time, when it

24  was in a joint venture with our client, had, in fact, construed

25  the claims of the patent.

6

1          THE COURT:  All right, that kind of evidence is

2    relevant.  Anything the inventor said about the meaning of the

3    claims is relevant.

4          Generally speaking, I don't think we need live

5    witnesses at Markman hearings.  Excerpts from depositions will

6    usually serve, and you should confine your discovery from this

7    point on to matters that will be brought to the Court's

8    attention at the Markman hearing.

9          Now, let's set a date for the hearing itself.  What do

10   you suggest, some time in September or October?

11         MR. CALLAHAN:  September, your Honor, would work fine

12   for us.

13         With respect to this extrinsic versus intrinsic

14   evidence, we would be happy to cite your Honor a couple of

15   cases, Markman included, but two recent federal circuit cases

16   interpreting Markman which really point the Court very heavily

17   and very strongly towards relying exclusively on the intrinsic

18   evidence in the patent documents themselves.

19         And, frankly, although it may well be that we would

20   like to take the deposition of the inventor at some point, we

21   don't see the need to do that prior to the Markman hearing.

22   What the inventor says as a matter of law cannot contradict the

23   clear meaning of the terms as they --

24         THE COURT:  What if the inventor says something that

25   limits his patent short of what he now claims it comprehends?

1   I am thinking not so much of self-serving statements by the

2   inventor but, rather, admissions that the inventor might make

3   in a deposition.

4        MR. RUPERT:  I think, your Honor, with all due respect

5   to counsel and the Court, September may be somewhat of a short

6   date.  We are not expecting to get 3M's discovery responses

7   until the latter part of August.

8        THE COURT:  Let's make it October.  Is this a one-day

9   matter, do you think?

10        MR. CALLAHAN:  I would think, your Honor, that --

11        As I understand your Honor's procedure, both parties

12   would file simultaneously, I assume, a 15-page brief, or less.

13        THE COURT:  Very short briefs.

14        MR. CALLAHAN:  Then we would come in and be prepared

15   with demonstrative exhibits or excerpts or whatever to argue

16   our positions.

17        THE COURT:  Oral argument, essentially the same type

18   of thing you would do on a motion for summary judgment.

19        MR. CALLAHAN:  I would expect that a day would be more

20   than enough time, your Honor.

21        THE COURT:  All right.  How about we set the date for

22   the Markman hearing.

23        It turns out October is not going to be good for me.

24   Let's go to November.  How about Friday, November 7th, at 10:00

25   a.m.

1        MR. RUPERT:  In terms of a briefing schedule on the

2  issues, your Honor?

3        THE COURT:  Right, I will give you that in just a

4  second.

5        MR. RUPERT:  Sorry.

6        THE COURT:  Prehearing briefs to be filed let's make

7  it -- by October 31st would be fine, a week ahead of time.

8        MR. RUPERT:  They will be simultaneous briefs with no

9  responses?

10       THE COURT:  Right.

11       And what I find most helpful is briefs that go to the

12  technology involved or the things that judges usually don't

13  know anything about in terms of the devices or whatever

14  materials are involved, plus, as far as the law is concerned,

15  any presumptions that might govern the interpretation of the

16  claims, any rules of law that might be pertinent to the

17  interpretation of the claims in the particular case.

18       Okay, thank you.

19       MR. RUPERT:  One final point, your Honor.  We had

20  discussed in the chambers conference a draft protective order,

21  the possibility of a protective order.

22       THE COURT:  Okay.

23       MR. RUPERT:  We are working with counsel to come up

24  with some language.  We have not yet finalized it.  The fact of

25  the matter is I don't know that it is going to be necessary

9

1   that we have one in the interim period for the Markman type

2   discovery although it may very well be in relation to some of

3   the depositions that we might want to take of 3M.

4          MR. CALLAHAN:  We have agreed, your Honor, at least

5   for the interim period until we can hash out the details of a

6   protective order that everything the parties produced to one

7   another will be held to the attorneys alone, and so far, that

8   seemed to work.  We will try to make progress on getting a

9   protective order in place to the extent that we have a need for

10  that at some later point.

11         MR. RUPERT:  There may be certain of the information,

12  your Honor, that I am going to have to share with my client,

13  and I would like at some point to have the opportunity to do

14  that.

15         THE COURT:  Well, if there is any problem about it,

16  come on in and I will resolve it; otherwise if you agree on

17  something, you can just submit it by mail.  But if it relates

18  to confidential information, spell that out in there.

19         I mean, you probably heard me say earlier I don't like

20  these protective orders that just authorize anybody to

21  designate something that is confidential even if it isn't.

22         MR. RUPERT:  I think we have already defined fairly

23  closely the confidential information.

24         THE COURT:  Okay.

25         MR. CALLAHAN:   Thank you, your Honor.

10

1          MR. RUPERT:  Thanks, your Honor.

2      (Which were all the proceedings had in the above entitled

3 cause on the day and date aforesaid.)

4 I certify that the foregoing is a correct transcript from the
record of proceedings in the above-entitled matter.
5 _Laura M. Brennan_                    _9-16-97_
  Laura M. Brennan                      Date
6 Official Court Reporter
  Northern District of Illinois

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25